**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| KIMBERLY HANNAH-WALKER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:12-CV-61-PRC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Kimberly Hannah-Walker on February 9, 2012, and Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 17], filed by Plaintiff on June 8, 2012. Plaintiff requests that the August 7, 2009 decision of the Administrative Law Judge denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") be reversed or remanded for further proceedings. On September 12, 2012, the Commissioner filed a response, and Plaintiff filed a reply on October 23, 2012. For the following reasons, the Court denies the relief sought.

**PROCEDURAL BACKGROUND**

On November 8, 2004, Plaintiff filed applications for DIB and SSI, alleging an onset date of August 8, 2004. Her applications were denied initially on April 7, 2005, and upon reconsideration on June 9, 2005. Plaintiff timely requested a hearing, which was held on August 3, 2006, before Administrative Law Judge ("ALJ") John Meyer.  ALJ Meyer issued a decision denying benefits on February 17, 2007. Plaintiff requested a review by the Appeals Council, which remanded the decision on December 2, 2008. A supplemental hearing was held on May 27, 2009, by ALJ Paul Armstrong. In appearance were Plaintiff, her attorney Jyott Raval, impartial medical expert Dr.

Sheldon J. Slodki, and impartial vocational expert ("VE") Leonard M. Fisher.  The ALJ issued a

written decision denying benefits on August 7, 2009.  He made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2008.

2.  The claimant has not engaged in substantial gainful activity since August 8, 2004, alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: arthritis in the bilateral hips and feet, as well as in the bilateral knees (left knee replacement performed twenty years ago); degenerative disc disease, obesity, asthma, diabetes, peripheral neuropathy; and urinary incontinence (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform low-end semi-skilled sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Based on the combination of the claimant's impairments, she is allowed a sit/stand option during the eight-hour workday, and is directed to avoid climbing ropes, ladders and scaffolds and work at unprotected heights, around dangerous moving machinery, open flames or bodies of water.

6.  The claimant is capable of performing her past relevant work as a retention specialist/clerk, newspaper worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from August 8, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 26-36.

On December 6, 2011, the Appeals Council denied Plaintiff's request for review, leaving the

ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A.  Medical Background

In August 2001, Plaintiff was diagnosed with diabetes mellitus. Plaintiff was obese, weighing between 304 and 325 pounds at a height of 5'6". This gave her a body mass index of between 49.1 and 52.5 respectively. On February 14, 2002, Plaintiff presented to Methodist Hospitals, Inc. with acute back and hip pain. The impression from a July 10, 2002 x-ray of Plaintiff's knees was: "Mild osteoarthritic changes of bilateral knee joints and patellofemoral joints are visualized with changes slightly more prominent on the right compared to the left." (AR 282). On July 19, 2002, Dr. Anekwe diagnosed osteoarthritis of the knees. At a visit in late 2002, Dr. Anekwe included a diagnosis of anxiety. On December 14, 2002, Plaintiff presented to the emergency room at Methodist Hospitals complaining of shoulder, back, hip, and leg pain. The hip pain had become worse over the past week. She indicated that the pain was worse when she lies down.

On April 8, 2003, Dr. Zeitoun performed a consultative examination and indicated that Plaintiff has a slow gait due to morbid obesity, knee, and back pain. Plaintiff was able to get on and off the exam table without assistance and did not require an assistive device. She was able to walk on heels and toes with great difficulty and was unable to fully squat. She had decreased range of

motion in the knees with tenderness and crepitations, hips and lumbar spine with tenderness in L1-L5. She had full range of motion in all other joints. Straight leg raises were negative 30 degrees bilaterally. Dr. Zeitoun diagnosed Plaintiff with Type II diabetes mellitus, morbid obesity, asthma, hypertension, low back pain (rule out degenerative disc disease), history of panic attacks, and bilateral knee pain (rule out osteoarthritis).

On April 15, 2003, Jeffrey Karr, Ph.D., conducted a consultative examination. He did not review any medical records other than an undated disability report completed by Plaintiff that indicated alleged panic attacks and multiple somatic concerns. Dr. Karr diagnosed Plaintiff with an anxiety disorder not otherwise specified and multiple somatic concerns.

On March 26, 2004, Plaintiff complained to Dr. Anekwe of pain in the neck, down the spine, and in her knees. On May 14, 2004, Plaintiff complained to Dr. Anekwe of leg pain and swelling in her ankles. On January 12, 2005, Dr. Anekwe filled out a medicaid application form on behalf of Plaintiff and wrote: "Patient has some difficulty with gait due to osteoarthritis of knees." AR 389.

At the February 21, 2005, consultative examination with Dr. Teofilo Bautista, Plaintiff reported that she does not do daily AccuCheck and that she was currently out of her Glucophage XR medication. She was not on an ADA diet. She reported that her back pain started in the year 2000 and that it is continuous at a level of 9 on a scale of 10. Dr. Bautista noted than an x-ray of the lumbar spine in December 2002 was within normal limits and that an x-ray of both hips revealed no fracture or dislocation. Plaintiff was able to walk 30 feet without a cane before complaining of hip and knee pain. She could stand for 30 minutes, climb 12 steps, and lift 15 pounds. She reported that she had suffered from panic attacks since she was fifteen years old. She reported being able to do household chores at her own pace. Dr. Bautista noted a history of left knee arthropathy and a history

of artificial left knee, but noted a normal, steady gait with no limping. Plaintiff refused to do range of motion for the back. She had some tenderness in the right hip with none in the left hip. The left knee had tenderness at the medial compartment but no pain or tenderness in the right knee. Dr. Bautista observed bilateral knee flexion of ninety degrees. Plaintiff was unable to do range of motion for both hips. Dr. Bautista's impressions were diabetes mellitus; history of asthma; depressive disorder, anxiety disorder, and history of panic attacks; osteoarthritis in both knees; right hip pain; chronic low back pain; hypertension; and morbid obesity.

On February 1, 2005, J. Theodore Brown, Jr., Ph.D, who performed a consultative examination, diagnosed major depressive disorder nos, generalized anxiety disorder nos, (rule out pain disorder associated with a general medical condition), high blood pressure, diabetes, asthma, and a pinched nerve in her back. Dr. Brown assigned Plaintiff a GAF score of 55-60 and gave her a fair prognosis if she is given proper support.

On May 13, 2005, Dr. Anekwe signed a food stamp application and indicated thereon that Plaintiff is unable to sit, stand, walk, lift, grasp, push/pull, or bend because of chronic back pain. That same date, at an examination, Dr. Anekwe diagnosed her with chronic back pain and bipolar disorder. On April 14, 2006, Dr. Anekwe filled out an FMLA leave form for Meijer, Plaintiff's employer, and wrote, "Patient has arthropathy to both knees and her back. Also suffers from depression and anxiety neurosis." (AR 429).

On October 4, 2005, at a visit with Dr. Anekwe, Plaintiff was diagnosed with spinal spasms. On October 14, 2005, one of Dr. Anekwe's diagnoses was incontinence of urine.[1] On February 28, 2006, Plaintiff complained to Dr. Anekwe of pain in both knees.

---

[1] Plaintiff cites several other pages in the record (namely 259, 266, 270, 280, ) in support of a diagnosis of incontinence; however, a review of these records reveal that they do not indicate incontinence.

5

On August 8, 2006, Dr. Anekwe wrote a letter indicating that Plaintiff was under his care for poorly controlled insulin dependent diabetes mellitus, chronic back pain, disassociated disorder, bipolar disease, atypical chest pain, asthma, exogenous depression, and incontinence of urine. On September 16, 2006, Dr. Anekwe wrote a letter indicating that Plaintiff was under his care for poorly controlled insulin dependent diabetes mellitus, chronic back pain, disassociated disorder, bipolar disease, atypical chest pain, asthma, exogenous depression, and incontinence of urine. He indicated that she was symptomatic and had not sufficient progressed in her medical condition. Dr. Anekwe opined that Plaintiff was totally unable to work at any gainful employment. He further opined that she was unable to bend, stoop, lift, climb, stand for long periods of time, or sit over 10-15 minutes at a time. He opined that Plaintiff was unable to engage in any stressful situations, had difficulty with interpersonal relationships, and continues to be anxious, to be restless, and to have difficulty with blood sugar control. On February 27, 2007, Plaintiff saw Dr. Anekwe for follow-up of her diabetes. Plaintiff reported pain to her legs and back.

On February 27, 2008, Plaintiff was treated at Edgewater Systems for Balanced Living. Her medical conditions were noted as diabetes, hypertension, back pain, osteoporosis, and asthma. She was diagnosed with bipolar disorder and depression unspecified and was given a GAF of 50.

On March 28, 2008, Dr. Anekwe wrote a letter certifying that Plaintiff was under his care for poorly controlled insulin dependent diabetes mellitus, chronic back pain, disassociated disorder, bipolar disorder, atypical chest pain, asthma, exogenous depression, and incontinence of urine. He opined that, due to these diagnoses, Plaintiff has difficulty focusing and concentrating. He indicated that her back allows her to only sit or stand for no more than one hour at a time. On April 11, 2008,

6

Plaintiff visited Dr. Anekwe with complaints of back and neck pain and for management of her diabetes medications and supplies.

In treatment records with Dr. Tran at Edgewater Systems, dated April 4, 2008, April 14, 2008, May 2, 2008, June 11, 2008, October 2, 2008, January 12, 2009, May 1, 2009, and May 15, 2009, Plaintiff reported being irritable, having difficulty dealing with others, and experiencing severe mood swings. In treatment records dated September 12, 2006, May 2, 2008, June 11, 2008, October 2, 2008, January 12, 2009, January 30, 2009, March 5, 2009, and May 15, 2009, Plaintiff reported experiencing panic attacks, feeling anxious, her mind racing, and feeling overwhelmed by everyday stressors.

On June 12, 2008, Plaintiff saw Dr. Anekwe, complaining of being tired for two weeks and having back, neck, and leg pains. She also wanted to follow up with mental health treatment at Edgewater. Dr. Anekwe diagnosed her as bipolar, suffering from anxiety, and having chest pain. On October 16, 2008, Plaintiff presented to Dr. Anekwe with complaints of pain in her right knee and left hip. Her diagnoses included hypertension, obesity, and diabetes.

On October 27, 2008, a Physician Progress Note from Dr. Tran with Edgewater Systems indicates diagnoses of bipolar disorder and depression, unspecified.  Plaintiff was given a GAF of 50 with the explanation of "serious impairment with work, school, or housework." (AR 482). A January 30, 2009 Individual Progress Note and May 1, 2009 and May 4, 2009 Physician Progress Notes from Dr. Tran with Edgewater Systems contain the same diagnoses.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by

substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.  *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence."  *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).  "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings."  *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence.  *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55

8

F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must

"'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing

court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful

review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see*

*also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of

evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski*

*v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into

the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a

"disability" as defined by the Social Security Act and regulations. The Act defines "disability" as

an inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from

doing her previous work, but considering her age, education, and work experience, it must also

prevent her from engaging in any other type of substantial gainful activity that exists in significant

numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f),

416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry

to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not

disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff makes five arguments for remand of the ALJ's decision: (1) the ALJ improperly analyzed Plaintiff's mental impairments; (2) the RFC determination has no basis in the evidence and the ALJ failed to explain his analysis of Plaintiff's sitting limitation; (3) the ALJ mischaracterized the medical expert's opinion; (4) the ALJ failed to obtain updated evidence and improperly relied

10

on remote evidence to determine the severity of Plaintiff's knee impairment; and (5) the ALJ improperly failed to take Plaintiff's urinary incontinence into consideration. The Court considers each proposed basis for remand in turn.

### A. Mental Impairments

Plaintiff contends that the ALJ improperly analyzed her mental impairments because the ALJ determined the severity of her mental impairments without the support of a medical opinion and further failed to include in the RFC the mental limitations that he did find.

First, the Court finds that the ALJ properly analyzed Plaintiff's mental impairments and did so with the support of a medical opinion of record. At step two of the sequential analysis, the ALJ found that Plaintiff did not have any severe mental impairments. The ALJ found that Plaintiff's medically determinable affective disorder and anxiety related disorder, considered singly and in combination, do not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities. The ALJ reasoned that Plaintiff's mental impairments are treated with prescription medication and that Plaintiff is symptomatic only when she does not routinely take her medication. He found that, "[w]hen compliant with medication, the claimant is able to work and effectively cope with stressors." (AR 26). The ALJ stated that he considered Plaintiff's longitudinal treatment history, including independent psychological evaluations, outpatient counseling therapy, and treatment by Plaintiff's primary care physician.

The ALJ gave "significant" weight to the observations and opinions of Dr. Karr from the April 2003 psychological evaluation, which included the finding that Plaintiff's panic attacks were adequately controlled with Xanax. The ALJ then noted that the psychiatric review technique completed by Dr. Shipley in May 2003 based on the available evidence, including Dr. Karr's

opinion, indicated only mild functional limitations from mental impairments. Dr. Shipley noted that Plaintiff reported no difficulties socializing with co-workers and worked through panic attacks at work.

The ALJ then discussed the February 2005 psychological evaluation by Dr. Brown, at which Plaintiff presented with generalized anxiety and problems with sleep, energy, short-term memory and concentration. The ALJ discussed Dr. Brown's findings from the mental status examination and noted Dr. Brown's diagnosis of major depressive disorder nos and generalized anxiety disorder nos, with a GAF of 55 to 60, which the ALJ stated indicates moderate symptoms. The ALJ went on to note Dr. Kladder's mental RFC assessment from March 2005, in which he found that Plaintiff's degree of functional limitation was mild in restrictions of activities of daily living, moderate in difficulties in maintaining social functioning, moderate in difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. The ALJ continued with a summary of the findings by Dr. Godbolt with Edgewater Systems for Balanced Living from the September 2006 psychiatric evaluation. Dr. Godbolt diagnosed panic disorder and major depression, recurrent. He assigned a GAF of 50. The ALJ noted that, at the time of that assessment, it appeared from the record that Plaintiff was not compliant with her psychiatric medication.

The ALJ then found that the longitudinal psychiatric treatment record reveals that Plaintiff's symptoms were treated conservatively with prescription medication and counseling, that the therapies were effective, but that Plaintiff's noncompliance with medication and therapy allowed her symptoms to persist unabated. The ALJ based this reasoning on Dr. Anekwe's diagnoses and treatment records, to which the ALJ gave "weight." The ALJ further supported this reasoning with a discussion of Dr. Tran's treatment records from outpatient counseling at Edgewater Systems from

2006 through the hearing date in 2009. This included several notations about the effectiveness of medications and a comment that Plaintiff was able to "handle her job" on medication. (AR 28). The ALJ found that these records also showed noncompliance with counseling therapy because Plaintiff cancelled or did not attend 25 appointments from August 2006 through April 2009.

The ALJ then wrote, "Dr. Tran opined in May 2009 that the claimant's mental impairments limited but did not preclude a range of work activities," which is supported by the Mental Impairment Questionnaire filled out by Dr. Tran. (AR 28). He then gave "substantial" weight to Dr. Tran's opinions. The ALJ noted that Dr. Tran opined in that questionnaire that, when Plaintiff was out of medication, she became symptomatic and that Plaintiff had moderate limitations in her activities of daily living, marked limitations in her social functioning, marked limitations in concentration, persistence, or pace, and a history of four or more episodes of decompensation in the previous year "when not on medication." (AR 29). Finally, the ALJ noted that Dr. Tran opined that, when on medication, Plaintiff was able to handle work and life stressors.

The ALJ concluded:

> The longitudinal treatment record shows that [Plaintiff's] psychiatric symptoms are treatable with medication and counseling therapy. [Plaintiff] simply has not cooperated with that treatment. Independent psychological evaluations have shown that [Plaintiff] has maintained a full slate of daily activities despite her impairments, and her objective mental status was generally observed to be good. As such, I find that [Plaintiff's] affective and anxiety disorders do not cause more than a minimal impairment on her ability to perform basic work activities and are non-severe impairments under the Regulations.

(AR 29). Thus, the ALJ explained in several ways, supported by the opinion evidence of record, that Plaintiff became symptomatic when she was not on her medication but that when she was complaint with medication and treatment, she could work and handle the stress in her life. Plaintiff does not acknowledge, much less challenge or dispute, this reasoning by the ALJ. This is not a case, as

13

suggested by Plaintiff, in which the ALJ summarized the evidence without analysis. Nor is this a case in which the ALJ failed to rely on any opinion evidence and made improper medical inferences. The ALJ's determination at step two that Plaintiff's mental impairments are non-severe is supported by substantial evidence and a thorough explanation by the ALJ of the weight given to the evidence.

Plaintiff also argues that the ALJ erred by not incorporating into the RFC determination the mild limitations in her activities of daily living, social functioning, and concentration, persistence, or pace that the ALJ did find. The regulations provide that, if the ALJ rates the degree of limitation in the first three categories as "none" or "mild" and "none" in the fourth area, the impairment is "not severe." 20 C.F.R. § 404.1520a(d)(1). A "non-severe" impairment is one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities," which include physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(a), (b). Nevertheless, an ALJ must include limitations from non-severe impairments in the RFC determination. *See* SSR 96-8p, 1996 WL 374184, at *5 (Jul. 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).

In this case, the ALJ's finding that Plaintiff's mental impairments were non-severe was based on the medical opinion of Plaintiff's treating psychiatrist, Dr. Tran, that Plaintiff is able to function in the work environment when she takes her medication. This finding was not an improper medical inference as argued by Plaintiff, but rather a finding based on a medical opinion of record that was

given "significant" weight. *See, e.g.*, *Kasarsky*, 335 F.3d at 544 (declining to "second-guess" the ALJ's determination that the plaintiff's mental impairments were not significant based on evidence in the record that the plaintiff was able to work despite those problems). Plaintiff identifies no evidence in the record to contradict this finding regarding her compliance with medication or her ability to function when compliant. Accordingly, the Court denies the request to remand on this basis.

### B. Physical RFC

The remaining four bases for remand all go to the formulation of the physical RFC. Although the ALJ's decision is not perfect, the concerns raised by Plaintiff do not warrant remand.

*1.    RFC Determination and Sitting Limitation*

In the RFC, the ALJ found Plaintiff capable of working at the low-end, semi-skilled sedentary exertional level, meaning that she was capable of sitting with a sit/stand option for six hours out of an eight-hour work day.

First, Plaintiff argues that the ALJ's RFC finding warrants reversal because the ALJ did not rely on any one of the opinions of Dr. Slodki (independent medical expert), Dr. Lopez (State Agency physician), or Dr. Anekwe (treating physician) and because the ALJ did not demonstrate an evidentiary basis for the specific limitations incorporated in the RFC.

In formulating Plaintiff's RFC, the ALJ did not directly adopt the RFC given by either Dr. Lopez or Dr. Anekwe. Dr. Lopez gave an RFC for a limited range of light work, and the ALJ gave Dr. Lopez's opinion "great" weight. Dr. Anekwe gave an RFC for less than sedentary work, and the ALJ gave Dr. Anekwe's opinion "limited" weight. As for Dr. Slodki, he did not give an RFC (although he did testify that he did not *disagree* with Dr. Lopez's RFC and did not agree or disagree

15

with Dr. Anekwe's RFC), yet the ALJ mistakenly attributed to Dr. Slodki an RFC for light work (which is discussed in the next section). The ALJ gave his opinion "substantial" weight. Plaintiff argues that the failure to rely on any one of the medical opinions of record constitutes the creation of an impermissible "middle ground" RFC by the ALJ without an explanation of what medical opinion or evidence in the record was the basis for the determination.

As an initial matter, Plaintiff does not contest the weight given by the ALJ to the opinions of any of these physicians. Next, Plaintiff is correct that the ALJ did not adopt any particular doctor's RFC opinion, but he was not required to do so. The regulations provide, as acknowledged by the ALJ in his decision, that the RFC determination is the responsibility of the ALJ. *See* 20 C.F.R. § 404.1546(c). Plaintiff does not identify any language in the decision that the ALJ took an "average" of the medical opinions, nor does she point to any authority that the ALJ's RFC finding must be endorsed by a doctor. An ALJ is entitled to adopt the opinion of a medical source regarding a claimant's RFC, but the ALJ's RFC finding and the medical source opinion

> are not the same thing. A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the *adjudicator*'s ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).

SSR 96-5p, 1996 WL 374183, *4 (1996) (emphasis added). An ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

In this case, the only doctor who gave a more restrictive RFC than the one given by the ALJ was treating physician Dr. Anekwe, who opined that Plaintiff could only sit for less than six hours a day. However, the ALJ gave Dr. Anekwe's opinion "little" weight. In doing so, the ALJ explained

16

that, although Dr. Anekwe treated Plaintiff for many years, his opinions were not fully consistent with the medical evidence of record. It appeared to the ALJ that, in formulating the RFC, Dr. Anekwe adopted Plaintiff's alleged limitations without considering the ameliorating effects of medical treatment, including prescription medication; the ALJ suspected that this was because Plaintiff was routinely noncompliant with treatment. As for the manipulative limitations, the ALJ noted that Dr. Anekwe based them on Plaintiff's chronic back pain; however, the ALJ found that "the medical evidence record reveals that [Plaintiff's] chronic back pain resulting from degenerative disc disease was sufficiently controlled with pain medication." (AR 33). Plaintiff does not contest this analysis, its factual basis, or the weight given to Dr. Anekwe's opinion by the ALJ. Nor does Plaintiff identify any specific evidence that supports the more significant limitations found by Dr. Anekwe.

Some courts have found that an ALJ is not permitted to construct what they call a "middle ground" RFC without a proper medical basis. *Bailey v. Barnhart*, 473 F. Supp. 2d 822, 838-39 (N.D. Ill. 2006) (finding that an ALJ that has rejected the available medical evidence upon which an RFC could be based must call a medical advisor or obtain clarification of the record). Put another way, when an ALJ denies benefits, he "is not allowed to 'play doctor' by using his own lay opinions to fill evidentiary gaps in the record." *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (citations omitted) (finding the ALJ erred in creating an RFC after rejecting a medical opinion, failing to weigh the other opinions and reports, and failing to consider subsequent injuries to the report on which the ALJ relied). This is not a case in which the ALJ entirely rejected the relevant medical opinions and independently created an RFC, as in the cases cited by Plaintiff. *See Reed v. Colvin*,

2:12-CV-33, 2013 WL 4584553, at *7 (N.D. Ind. Aug. 28, 2013); *see also Bailey,* 473 F. Supp. 2d at 839.

Rather, the ALJ assigned weight to each medical opinion and considered them in combination with the medical evidence. The ALJ carefully documented Plaintiff's reports of back and knee pain, including her reports to Dr. Zeitoun in April 2003, her report in February 2005 to Dr. Bautista that her back pain had started in the year 2000 and that she was able to stand for 30 minutes, climb 12 steps, and lift 15 pounds, and Plaintiff's treatment with Dr. Anekwe beginning in the year 2001. To the extent Plaintiff is arguing that the ALJ should have relied more on her testimony and the restrictive opinion of Dr. Anekwe regarding her limitations in sitting and standing, Plaintiff has not objected to either the weight given to Dr. Anekwe's opinion, discussed above, or to the ALJ's credibility determination. In the credibility determination the ALJ discussed Plaintiff's activities of daily living, the effect of medication helping her adjust to working with her impairments, and her then-current work at Meijer. Finally, although the ALJ gave "substantial" weight to what he thought was an RFC for light work from Dr. Slodki and "great" weight to Dr. Lopez's RFC for a limited range of light work, the ALJ nevertheless considered the medical record as a whole and limited Plaintiff to sedentary work with non-exertional limitations because of "the combined effect of [Plaintiff's] functional limitations, especially her knee and back pain . . . ." (AR 33).

Second, Plaintiff argues that the ALJ's assignment of an RFC for sedentary work, which requires Plaintiff to be able to sit for six hours a day does not address the evidence that, according to Plaintiff, shows that she cannot tolerate sitting for long periods of time and does not account for her limited range of motion from osteoarthritis, chronic back pain, and extreme obesity.  In support, Plaintiff cites generally to six pages in the record without explanation. *See* Pl. Br., p. 7. These pages

are the April 30, 2003 examination report by Dr. Zeitoun in which he noted her slow gait due to

morbid obesity, her knee and back pain, and her limited range of motion in the knees, hips, and

lumbar spine (AR 306-07); treatment notes from Dr. Anekwe for a date in late 2004 in which he

notes joint disease in the left knee (AR 376);[2] the diagnosis of "acute back and hip pain" on an x-ray

form dated December 14, 2002 (AR 396); Dr. Anekwe's diagnosis of spinal spasms in a treatment

record dated October 14, 2005 (AR 425); and Dr. Anekwe's statement on the Medicaid application

form that Plaintiff "has some difficulty with gait due to osteoarthritis of knees." (AR 441). Plaintiff

does not suggest how any of this evidence is inconsistent with the ALJ's RFC for a limited range

of sedentary work with a sit/stand option.

Similarly, Plaintiff argues that the ALJ's findings regarding her ability to sit or stand for long

periods of time was directly contrary to Plaintiff's own testimony and failed to properly account for

the evidence demonstrating that sitting for extended periods of time caused her pain, as did getting

up, standing, or walking, which would have affected her ability to utilize the sit/stand option in the

RFC determination. In support, Plaintiff again cites generally to seven pages in the record without

explanation. *See* Pl. Br., p. 8 (citing AR 168, 177-78, 195, 385, 448, 591, 731). These citations are

to her own statement on the undated Disability Report–Adult that "I can not stand, lift, bend, walk

or sit for long periods of time," (AR 168); her identical statement on an undated Disability

Report–Adult–Form SSA-3368 (AR 177-78); her statement on an undated disability questionnaire

that when she does daily activities (which included five hours of work a day) her back or legs and

feet began to hurt and that she did not have the energy to do her daily activities (AR 195); Dr.

Anekwe's statement on the food stamp application form that Plaintiff's chronic back pain prevents

---

[2] Plaintiff also cites a page of treatment records from Dr. Anekwe at AR 379, but it does not appear that any of the notations support Plaintiff's stated proposition regarding her ability to sit or range of motion.

her from sitting, standing, walking, lifting, grasping, pushing/pulling, or bending (AR 385); Dr. Anekwe's 2006 RFC statement that Plaintiff has chronic back pain and osteoarthritis (AR 448); Dr. Anekwe's September 15, 2006 letter that provides that Plaintiff "is unable to bend, stoop, lift, climb, stand for long periods of time, sit over 10-15 minutes at a time," (AR 591); and her own hearing testimony regarding the severe pain she experienced from "standing on [her] legs" when she was working at Meijer, which caused her to leave in tears and go to the emergency room for pain medication (AR 730-31). Again, given the uncontested weight the ALJ assigned to Dr. Anekwe's opinion and his uncontested credibility determination regarding Plaintiff's subjective complaints, Plaintiff has not shown how any of this evidence is inconsistent with the ALJ's RFC for a limited range of sedentary work with a sit/stand option.

Third, Plaintiff argues that, although the ALJ considered her obesity and recognized that it aggravates her symptoms, particularly her osteoathritis and degenerative disc disease, he failed to explain how Plaintiff was still capable of sitting for most of the workday given her testimony that sitting for extended periods caused her pain. In support, she cites her hearing testimony that, when asked whether it would be better if she had a job sitting down, she answered, "For a certain amount of time, it'll be okay.  But sitting too long, is a pain because that's what I do when I'm not working. I'm at home sitting on the side of the bed and most of the time I'm lying down because I'm not feeling good sitting up or walking. Just to walk from my room to the restroom is a struggle. I'm holding on to everything." (AR 731). In context, this statement that sitting for too long is "a pain" suggests that she finds it more bothersome rather than painful. Plaintiff also cites Dr. Anekwe's September 15, 2006 letter and his statements regarding limited ability to sit on the April 25, 2005 food stamp application form (both discussed in the previous paragraph). Again, the ALJ weighed

20

Dr. Anekwe's testimony and considered Plaintiff's credibility as to this very issue, and Plaintiff does not challenge those findings.

Finally, Plaintiff is correct that Dr. Slodki noted that Plaintiff's obesity would aggravate any "upright activity," (AR 751), and that the ALJ gave Dr. Slodki's opinion "significant" weight; however, Dr. Slodki made that statement in the context of explaining why he did not disagree with Dr. Lopez's RFC for light work. Nor does the statement indicate that Plaintiff cannot perform the sitting requirements of sedentary work. *See, e.g.*, *Carrasco v. Astrue*, 12 C 0483, 2013 WL 4516413, at *10 (N.D. Ill. Aug. 26, 2013). The ALJ expressly acknowledged that Plaintiff's obesity "contribute[d] to her functional limitations," and it was, in part, because of this condition, that the ALJ limited Plaintiff to sedentary work. *Compare Scott v. Astrue*, 647 F.3d 734, 740-41 (7th Cir. 2011) (finding that the ALJ did not build the requisite "logical bridge" because the primary evidence relied on by the ALJ in concluding that the plaintiff could stand for six hours and lift 10-20 pounds did not support the propositions for which it was cited (citing *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)).

Third, Plaintiff contends that the sit/stand option in the RFC was flawed because the ALJ failed to set forth specifically how long Plaintiff was able to sit at one time, how long she was able to stand at one time, or how frequently she would need to alternate between the two positions. Social Security Ruling 96-9p provides that, when an individual who is able to do less than a full range of sedentary work also has a requirement for alternate sitting and standing more frequently than with lunch and regular breaks, "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate between sitting and standing. *See* SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). The Commissioner argues that the absence of a specification presumes an "at-

will" sit/stand option. Although the ALJ did not use that exact phrase, courts within the Seventh

Circuit Court of Appeals have "found that similar hypotheticals satisfied SSR 96-9p because an at-

will sit/stand option was reasonably implied." *Tjelle v. Astrue*, No. 11 C 4907, 2012 WL 1339637,

at *8 (N.D. Ill. Apr. 18, 2012) (citing *Betts v. Astrue*, No. 09C7094, 2011 WL 1789822, at *45 (N.D.

Ill. May 6, 2011); *Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir. 2008) (finding that the ALJ

satisfied 96-9p with a hypothetical that asked the VE to assume an individual would "have a sit,

stand option where he could sit or stand as needed during the day")).

2.   *Medical Expert's Opinion*

As noted in the previous section, the ALJ gave the opinion of Dr. Slodki, the independent

medical expert, "substantial" weight because the opinion was consistent with the record and was

supported with "sufficient elaboration." (AR 33). Plaintiff argues that the ALJ erred in doing so

because the ALJ's finding was based on a mischaracterization of the record and of Dr. Slodki's

opinion.

The ALJ stated in his decision that Dr. Slodki provided an RFC for light work. (AR 33). This

was incorrect. In fact, Dr. Slodki testified that he was not giving an RFC. Rather, Dr. Slodki testified

that he did not *disagree* with Dr. Lopez's March 2005 RFC for light work with only occasional

stooping, kneeling, crouching, or crawling. Dr. Slodki then noted that Dr. Lopez's opinion was from

2005, that it was "entirely possible" that Plaintiff's condition had worsened since then, but that he

had not examined her, implying that he could not give an opinion to that effect.

Next, when asked whether he disagreed with the significantly more restrictive RFC for less

than sedentary work provided on May 12, 2009 by Plaintiff's treating physician, Dr. Anekwe, Dr.

22

Slodki responded that he did not agree or disagree with the opinion.[3] Dr. Slodki then explained that one of the reasons he did not disagree with Dr. Lopez's RFC for a limited range of light work was the lack of objective evidence, such as x-rays, in the record to support greater limitations. As noted in the previous section, Dr. Slodki acknowledged that Plaintiff's morbid obesity could aggravate activity that involves being upright.

Plaintiff contends that the ALJ's mischaracterization of Dr. Slodki's testimony requires remand because it is impossible to determine what RFC the ALJ would have found had he understood that Dr. Slodki did not agree or disagree with the other opinions of record and that Dr. Slodki did not provide a specific RFC finding. The Court disagrees. Although the ALJ gave Dr. Slodki's opinion "substantial" weight, (AR 33), the ALJ did not make his RFC finding based solely on what he stated he believed to be Dr. Slodki's RFC for light work. Rather, as set forth in the previous section, after discussing Dr. Slodki's opinion, the ALJ considered "the combined effect of Plaintiff's functional limitations, especially her knee and back pain" to find that Plaintiff is only capable of sedentary work with additional non-exertional limitations. (AR 33). Plaintiff does not acknowledge this factual basis in her brief nor does she discuss the ALJ's reasoning behind the RFC. Moreover, Plaintiff does not contest the weight given by the ALJ to the opinions of Dr. Lopez and Dr. Anekwe ("substantial" weight to Dr. Lopez and "limited" weight to Dr. Anekwe), upon which the ALJ also based his decision. *See* (AR 33-34). Because the ALJ's RFC finding was considerably more limiting than the RFC for light work attributed to Dr. Slodki, the ALJ's RFC was not based on Dr. Slodki's opinion, and, thus, any error in misstating the opinion is harmless.

---

[3] Dr. Anekwe opined that Plaintiff's impairments prevent her from lifting or carrying more than 10 pounds, from standing more than 2 hours a day, and from sitting more than 6 hours a day, that she can never climb, kneel, crouch, or crawl, that she can only occasionally balance, reach, or handle, and that she can finger frequently.

An error is harmless if "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support," because remanding would be "a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Plaintiff has not argued how the ALJ's opinion might have changed had he properly stated Dr. Slodki's opinion as to RFC. Given that the ALJ already discounted the weight given to Dr. Slodki based on Plaintiff's functional limitations, resulting in an RFC of a limited range of sedentary work, the Court is confident that the ALJ would give the same opinion on remand even if he had properly stated Dr. Slodki's testimony regarding RFC.

In support of her argument, Plaintiff cites *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009), *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006), and *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004); however, all three cases concerned a flawed credibility determination based on a factual misunderstanding, ignored evidence, or a flaw in logic. None of the cases addressed the ALJ's formulation of the RFC.  Plaintiff also cites *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004), in which the court concluded that it could not determine whether the ALJ had adequately considered the claimant's personality disorders because the ALJ had not built an "accurate and logical bridge from the evidence to their conclusions." *Id*. As discussed, the ALJ built the requisite logical bridge in this case.

3.    *Updated Medical Evidence*

At the hearing, Dr. Slodki, the independent medical expert, noted that the x-rays of Plaintiff's knees regarding her osteoarthritis were "very remote," (AR 746), and testified that it was possible that there had been further degeneration since the date of those images. Dr. Slodki testified that a

degenerative impairment such as osteoarthritis would worsen over time. Thus, Plaintiff argues that the ALJ's findings as to the severity of Plaintiff's osteoarthritis in her knees relied on x-rays that were seven years old, that this remote evidence did not accurately reflect the severity of Plaintiff's osteoarthritis, and that updated x-rays would accurately represent the level of degeneration in Plaintiff's knees, allowing for an accurate assessment of her ability to work.

Plaintiff cites *Smith v. Apfel*, 231 F.3d 433, 437-38 (7th Cir. 2000), which is factually distinguishable. There, the ALJ discredited the opinion of a treating physician because the *doctor* had not ordered an x-ray to confirm the presence of arthritis. *Id*. at 437. The court of appeals held that, if the ALJ was concerned that the medical evidence was insufficient to determine whether the claimant was disabled, the ALJ should have ordered more recent X-rays. *Id*. The ALJ was also faulted for disregarding early evidence of the claimant's degenerative knee disease. *Id*. In contrast, in the instant case, the ALJ did not discredit a doctor's opinion for the failure of the doctor to obtain objective measures, the ALJ did not ignore the early evidence of Plaintiff's knee, hip, and back pain, and the ALJ did not express concern over a lack of objective medical evidence.

"Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record." *See Smith*, 231 F.3d at 438 (citing *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991)). Failure to fulfill this obligation is "good cause" to remand for gathering of additional evidence. *Id*. at 586. Unlike in *Smith*, the ALJ in this case properly assessed the extent of the limitations related to Plaintiff's knee pain based on her longitudinal treatment records that were up-to-date through the date of the hearing. *See also Nelms v. Astrue*, 553 F.3d 1093, 1097-98 (7th Cir. 2009) (finding that the ALJ had failed to fully and fairly develop the record, in part because there was a gap in the medical records). The ALJ explicitly took into account Plaintiff's complaints of

25

knee pain when he determined that an RFC for light work was insufficient to accommodate Plaintiff's impairments. Thus, the fact that the ALJ did not request current x-rays of Plaintiff's knees does not require remand.

4.      *Urinary Incontinence*

Finally, Plaintiff contends that the ALJ improperly failed to take her urinary incontinence into consideration in his RFC finding. At step two of the sequential analysis, the ALJ listed urinary incontinence as a severe impairment, and the ALJ gave substantial weight to Dr. Slodki's opinion, which included testimony that urinary incontinence was one of Plaintiff's severe impairments supported by the record. However, in formulating the RFC, the ALJ spent a paragraph discussing Plaintiff's urinary incontinence and found that the record did not reveal that Plaintiff had been treated for the impairment or that the condition was significant or disabling. The ALJ wrote that "[i]t is possible that [Plaintiff] may only be required to wear a protective undergarment to correct the problem, which in itself would not cause any limitations that would prevent the performance of work activity" consistent with the RFC. (AR 34).

Although Plaintiff cites several record pages in support of her incontinence, many of them do not contain any reference to incontinence. The only page that does is the basic diagnosis of urinary incontinence by Dr. Anekwe. Plaintiff has not identified any objective evidence in the record, including her own testimony, showing limitations based on her urinary incontinence. Nor does she allege any functional work-related limitations that it would cause. Contrary to Plaintiff's assertion, the ALJ did not directly contradict himself like the ALJ in *Parker v. Astrue*, 597 F.3d 920, 924-25 (7th Cir. 2010). Rather, he found that Plaintiff suffers from urinary incontinence but then, after a complete review of the evidence of record, determined that the record did not support the

inclusion of any limitations in the RFC. Thus, the Court finds that the ALJ did not err in the RFC determination as to her urinary incontinence. *See Tovar v. Astrue*, 11 C 2660, 2012 WL 3717729 (N.D. Ill. Aug. 27, 2012).

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the relief sought in Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 17] and **AFFIRMS** the Commissioner of Social Security's final decision..

So ORDERED this 23rd day of September, 2013.

s/ Paul R. Cherry
_____
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record

27